# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **DAVID R. JONES,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.** |
| | § | 6:25-cv-308 |
| **CITY OF TEMPLE, TEXAS,** | § | |
| **CPL GEOFFREY GOODSON** | § | |
| *In his personal capacity,* | § | |
| **OFF AUMUA (BADGE 445)** | § | |
| *In his personal capacity,* | § | |
| **OFF JACQUEZ (BADGE 492)** | § | |
| *In his personal capacity,* **and** | § | |
| **LT BRIAN MOODY** | § | |
| *In his personal capacity* | § | |
| | § | |
| *Defendants* | § | |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

NOW COMES Plaintiff David R. Jones (hereinafter "Mr. Jones") and brings

this Complaint against Defendants City of Temple, LT Brian Moody (herein

referred to as "Defendant Moody") in his personal capacity, Corporal Geoffrey

Goodson (herein referred to as "Defendant Goodson") in his personal capacity,

Officer Aumua (herein referred to as "Defendant Aumua") in his personal

capacity, Officer Jacquez (herein referred to as "Defendant Jacquez") in his personal capacity, and the City of Temple (herein referred to as "Defendant City") and in support thereof alleges the following upon information and belief::

## I.    JURISDICTION AND VENUE

1.    This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983, and the First, and Fourth Amendments of the United States Constitution.

2.    Jurisdiction of this Court is found upon 28 U.S.C. § 1331 since this action arises under the Constitution and the laws of the United States.

3.    Venue is proper in the United States District Court for the Western District of Texas because the majority of events complained of occurred in Bell County, Texas.

4.    Pursuant to 42 U.S.C. § 1983, and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against all of the Defendants in their individual capacity, for the violations of Plaintiffs Constitutional rights and harm caused by Defendants' actions/inactions.

## II.    PARTIES

5.    Mr. Jones is a 70-year old, law-abiding citizen of the United States, an independent journalist, and a resident of the State of Texas who films law enforcement in the course of their duties while in public.

6.    Defendant Moody was a Bell County, Texas, resident at all times relevant to this complaint and acted as a Lieutenant for the Temple Police Department. He is being sued in his individual capacity.

7.    Defendant Goodson was a Bell County, Texas, resident at all times relevant to this complaint and acted as a Corporal for the Temple Police Department. He is being sued in his individual capacity.

8.    Defendant Aumua was a Bell County, Texas, resident at all times relevant to this complaint and acted as an Officer for the Temple Police Department. He is being sued in his individual capacity.

9.    Defendant Jacquez was a Bell County, Texas, resident at all times relevant to this complaint and acted as an Officer for the Temple Police Department. He is being sued in his individual capacity.

10.    The City of Temple is a political subdivision in the State of Texas that employs, trains, and manages individual Defendants.

11.    Each and all of the acts of Defendants alleged herein were committed by said Defendants while acting within the scope of his employment with Temple Police Department.

12.    Each and all of the acts of Defendants was committed by these Defendants despite their knowledge that they were engaging in unlawful and unconstitutional acts, and yet they did them anyway, knowingly, recklessly,

intentionally, wantonly, callously, purposely, purposefully, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

### III.   PREAMBLE

*"[E]xpression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments."*

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952)


*"The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read."*

Griswold v. Connecticut, 381 U.S. 479, 482 (1965)


### IV.   FACTUAL ALLEGATIONS

### A. July 19, 2023 Incident

13.     Mr. Jones is an independent journalist who films and reports on government officials, including police officers, and matters of public interest.

14.     On a balmy evening on July 19, 2023, Mr. Jones noticed three Temple Police Department cruisers next to a small, wooded area near 205 N. 12th St, Temple, Texas.

15.     As Mr. Jones was filming the three cruisers from a reasonable distance of approximately 50 feet away, another individual walked past Mr. Jones and the cruisers without being approached or harassed.



16.    Mr. Jones addressed the individual and asked what was going on, without response and the individual continued through the area without problems.

17.    Officers were unconcerned with people being in the area until the all-powerful video camera was seen in the hands of a citizen – the career killer or the "implicit right to know [which] accompanies the explicit right to speak"![1]



---

[1] Eric B. Easton, *Public Importance: Balancing Proprietary Interests and the Right to Know*, 21 CARDOZO ARTS & ENT. L.J. 139, 141–42 (2003).

COMPLAINT AND DEMAND FOR JURY TRIAL – DAVID JONES  6:25-cv-308

18.    As Mr. Jones stood filming into the wooded area where officers were interviewing another individual, he was approached in a confrontational manner by Defendants Moody and Goodson.

19.    Defendants had no problem with people in the "crime scene" until Mr. Jones pulled out his camera and began filming officers, a clear indication he was engaged in clearly established First Amendment protected activities.[2]



20.    Defendant Moody, while approaching Mr. Jones with CPL Goodson, loudly announced that "if you come back here, we're gonna take it" and, "you can't be filming our crime scene or we're going to take your phone."

21.    Defendant Moody also said, "this is a crime scene, and you're filming this. I'm going to take your phone."

---

[2] *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017).

22.     There is no local, state, or federal law that prohibits the filming of a crime scene, so the order was an unlawful order because the officer had no authority to dictate what can be filmed from a public place in plain view from a reasonable distance.

23.     Mr. Jones remained at the edge of the concrete slab approximately 50 feet from officers interviewing a subject.

24.     Mr. Jones in no way interfered with Defendants' investigation.

25.     Defendants were speaking with another man who was wearing black pants and no shirt at the time.

26.     Defendant Moody explained that "right now we've got this roped off as a crime scene" but there were no ropes, ribbons, or other indicators of a crime scene.

27.     Mr. Jones stood just a few feet from the closest cruiser.

28.     When Mr. Jones explained that he has a right to film in public, Defendant Moody accused him of being "unreasonable."

29.     Defendant Moody then assaulted Mr. Jones by using his body to physically push him backwards.



30.     After being pushed, Mr. Jones asked both officers for their names and badge numbers.   Defendant Moody provided his card to Mr. Jones, but Defendant Goodson refused to identify and instead pointed condescendingly to name tape and asked, "can't you read?"



31.     Defendant Moody provided Mr. Jones with Defendant Goodson's name and badge number because Defendant Goodson thinks that he doesn't answer to citizens.

32.     Defendant Goodson clearly didn't like that Mr. Jones had the right to film him and, in fact, was filming.

33.     Even after Mr. Jones asked Defendant to "pronounce it," Defendant Goodson responded, "you can read it."

34.     When Mr. Jones explained that he was "in public" and "far enough away from your crime scene," Defendant Moody looked around and decided to create an arbitrary "crime scene" that would effectively push Mr. Jones back to where he couldn't film officers.

35.     Defendant Moody pointed to a tree in the far off distance where he was "going to put up our tape" to create an unreasonably large "crime scene," not because it was actually a crime scene, but because Defendant Moody simply didn't want Mr. Jones there.



*Figure 1The red boxes indicate the approximate location of the cruisers.  Yellow circle is where Mr. Jones was standing.  Blue circles are where officers were standing with subject (white circle).  The purple circle is the tree that Defendant Moody referenced.*

COMPLAINT AND DEMAND FOR JURY TRIAL – DAVID JONES 6:25-cv-308

36.     If that entire was, in fact, a crime scene, Defendants all contaminated it by parking their cruisers within the crime scene and allowing other individuals to walk through it.

37.     The fact is that Defendant Moody lied to Mr. Jones and only created the "crime scene" to force him away where he couldn't film.

38.     Defendant Moody knew that the area was not a "crime scene" and made his determination solely for the purpose of infringing upon Mr. Jones' First Amendment protected conduct.

39.     Defendant Moody told Mr. Jones that if he did not back up behind what is marked as cruiser 3 above, he was going to arrest Mr. Jones for "interference" despite Mr. Jones not interfering in any way.

40.     When Mr. Jones explained that he wasn't interfering in any way, Defendants grabbed Mr. Jones and arrested him for "interference."

## B.  September 21, 2023 Incident

41.     On September 21, 2023, Mr. Jones doing what citizens throughout the country and most civilizations do on a regular basis: he was doing laundry.

42.     However, doing laundry is apparently a crime in Temple, Texas, if your name is David R. Jones.

43.     Officers arrived at the Scrub-Tub Laundromat at 1212 W. Ave H, where Mr. Jones was doing laundry.

44.     Upon observing the detention of an individual on the walkway of the business, Mr. Jones removed the all-powerful, career-killing cell phone with a camera on it.

45.     Mr. Jones deployed his weapon of mass information and had the unmitigated audacity to start recording Officers Aumua (Badge 445) and Jacquez (Badge 492) in a public place while engaged in the course of their duties.

46.     As officers began searching a suspect's bag,  Mr. Jones asked if the suspect gave consent to search the bag.

47.     Rather than ignore the question or answer that they had a constitutional basis for the search, Defendant Aumua demanded that Mr. Jones explains whether he "had business here."

48.     Mr. Jones responded, "yes, watching y'all."

49.     Defendant Aumua then told Mr. Jones that "unless you have business here, you need to leave."

50.     Mr. Jones refused to answer any further questions because slavery ended in 1865 and he ceased being a subject in 1776, and continued filming officers.

51.     In 1791, the Bill of Rights was ratified which protected the rights of citizens not to answer questions.

52.     Defendant Aumua knew that Mr. Jones had business there because he then unlawfully ordered Mr. Jones to "get your laundry and leave."

53.     During this exchange, other individuals who were not filming the officers were permitted to come and go without interference, threats of arrest, or demands to cease engaging in peaceful, lawful business.

54.     Mr. Jones refused to obey the unlawful command to leave a place he had a right to be.

55.     Defendant Aumua then assaulted Mr. Jones by grabbing his left wrist and pulling it painfully up his back.

56.     Mr. Jones placed his camera in his pocket.

57.     Defendant Aumua placed both of Mr. Jones' hands in handcuffs without reasonable suspicion or probable cause that Mr. Jones was engaged in any criminal activity.

58.     Defendant Aumua then demanded that Mr. Jones sit on the ground like a dog, which Mr. Jones refused as a free, law abiding citizen.

59.     Defendant Aumua then followed through on his threat to "if you don't sit down, I will sit you down!"

60.     Defendant Aumua then used torture compliance to pull Mr. Jones' arms up, throwing him off balance from the pain, and forced Mr. Jones on the ground despite Mr. Jones not fighting or resisting in any way.

61.     When Defendant Aumua released Mr. Jones, he stood up because he is not a dog, a slave, or a subject, and was not accused of any criminal activity.

62.     Defendant Aumua then again forcefully threw Mr. Jones to the ground despite not being a threat to anyone, not committing a single crime, and simply exercising his rights to film officers.

63.     Mr. Jones hit the ground so violently that his $1,000 phone flew from his pocket, stricking the concrete and cracking the screen.

64.     Defendant Aumua then placed Mr. Jones in his patrol car for violating a non-existent law to sit down.

65.     Mr. Jones remained in the vehicle for over ten minutes until Defendant Aumua's supervisor, SGT Taylor (badge 334) arrived and realized that Defendant Aumua's actions violated Mr. Jones' rights, and released Mr. Jones.

66.     SGT Taylor then identified the officers and incident number for Mr. Jones and took pictures of Mr. Jones' injuries.

67.     SGT Taylor, unlike the Defendants in this case, did the right thing by allowing Mr. Jones to continue with his laundry.

68.     Defendant Jacquez was present to witness the unlawful and unconstitutional actions of Defendant Aumua and did nothing to stop Defendant Aumua's violence or unlawful restraint.

## V.    CLAIMS AGAINST DEFENDANT

### COUNT I
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – False Imprisonment/Unlawful Arrest)

69.    Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

70.    At all times relevant herein, Defendants were acting under color of State law.

71.    Defendants unlawfully detained Mr. Jones by placing him in handcuffs using physical force, threats of arrest, and other means to restrain him from moving from one place to another.

72.    Defendants willfully detained Mr. Jones without consent, probable cause, or reasonable suspicion of a crime.  Plaintiff clearly stated he did not consent to a search or seizure to all Defendants.

73.    Defendants detained Mr. Jones without legal justification or authority of law because Defendants knew or should have known that Mr. Jones was engaged in constitutionally protected activities.

74.    Defendants acted unreasonably when they shoved, grabbed, and handcuffed Plaintiff.  Mr. Mr. Jones exhibited no signs of violence, and he was not suspected of criminal activity.

75.    Defendants were not in a high-pressure situation that would require split second decisions.

76.    Because there was no reasonable suspicion or probable cause of criminal activity, Defendants acted without authority of law.

77.     Defendants used so much force on Plaintiffs so as to cause Plaintiff to sustain bruises and cuts.

78.     At all times relevant, Defendants were required to obey the laws of the United States.

79.     At all times relevant, Plaintiff had a clearly established right to be free from excessive force of this nature.

80.     At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently used excessive force on Plaintiff and unlawfully seized him.

81.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(First Amendment – Unlawfully Preventing Protected Conduct)**

82.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

83.     At all times relevant herein, Defendants were acting under color of state law.

84.     Plaintiff has a First Amendment right to film law enforcement officers in the course of their duties in a public place.[3]

85.     All Defendants intentionally, knowingly, maliciously, recklessly, and/or unreasonably prevented Plaintiff from recording public officials conducting their duties.

86.     Plaintiff had a clearly established constitutional right to record the police.

87.     The Defendants' acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983.

88.     As a proximate cause of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages as a result.

## COUNT III
## MUNICIPAL LIABILITY 42 U.S.C. 1983

89.     Defendants' actions, and the actions of the Defendant City, demonstrate a policy, practice, or custom to retaliate against Plaintiffs for engaging in their protected First Amendment activity.

---

[3] *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017).

90.    The fact that so many officers are effecting or refusing to intervene in unlawful arrested for filming them in public is evidence that a practice or procedure exists to engage in said conduct.

91.    Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprive Plaintiff of his right to be free from retaliation for protected conduct.

92.    Defendant City failed to adequately train its employees on the right to film police officers in public.

93.    Defendant City failed to adequately train its employees that "A peace officer has a duty to intervene to stop or prevent another peace officer from using force against a person."  Tex. Code. Crim. P. § 2B.0251.

94.    The duty to intervene is heightened when the person against whom excessive force is being used is not suspected of a crime.

95.    Defendant City failed to adequately train its employees about the right to film to film law enforcement officers in a public place engaged in their public duties.

96.    At all relevant times, Plaintiff had a clearly established right to be free from unlawful policies, practices, and customs, as well as a right to film police officers in a public place.

97.    Defendant City showed a deliberate indifference to and ratified Defendant Officers' conduct.

**98.**    As a direct and proximate result of Defendant City's unlawful actions, Plaintiff was harmed.

## QUALIFIED IMMUNITY

99.    Defendants are not entitled to a qualified immunity defense.

100.    Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).

101.    To review claims of qualified immunity, a court first asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officers' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  If so, the court must then consider whether the right was clearly established, that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id*. at 202, 121 S. Ct. at 2156.

102.    Plaintiff has alleged several violations of his constitutional rights, meeting the first prong to overcome qualified immunity.

103.    *Turner v. Driver*, a 5th Circuit case out of Tarrant County, clearly established that Mr. Warden had a right to record officers in the course of their duties.  *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017).

104.    *Terry v. Ohio* clearly established that for a *Terry* frisk to be valid, an officer must have 1) "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a frisk, and 2)  the suspect must be "armed and dangerous."  *Terry v. Ohio*, 391 U.S. 1, 21-22 (1968).

105.    Warrantless arrests under Tex. Code Crim. P. § 14.01(b) must be supported by probable cause. See *Beverly v. State*, 792 S.W.2d 103, 104 (Tex. Crim. App. 1990).

106.    Probable cause exists under Article 14.01(b) if, when the arrest is made, the facts, circumstances, and reasonably trustworthy information known to the arresting officer, are sufficient for a prudent person to conclude that an individual committed or was committing a criminal offense. *State v. Martinez*, 569 S.W.3d 621, 628 (Tex. Crim. App. 2019) (quoting *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011) (quoting *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002)).  Specific and articulable facts are required. See *State v. Woodard*, 341 S.W.3d 404, 411-12 (Tex. Crim. App. 2011).

107.    The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the

detention is justified by reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 28, 88 S.

Ct. 1868, 20 L. Ed. 2d 889 (1968); *Derichsweiler v. State*, 348 S.W.3d 906, 914

(Tex. Crim. App. 2011).

108.    "[A] law enforcement officer's reasonable suspicion that a person may

be involved in criminal activity permits the officer to stop the person for a brief

time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist.*

*Court*, 542 U.S. 177, 185, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004).

109.    Reasonable suspicion to detain a person exists if an officer has

specific, articulable facts that, combined with rational inferences from those facts,

would lead him to reasonably conclude that the person detained is, has been, or

soon will be engaged in criminal activity. *York v. State*, 342 S.W.3d 528, 536 (Tex.

Crim. App. 2011).

110.    These facts must show unusual activity, some evidence that connects

the detainee to the unusual activity, and some indication that the unusual activity is

related to crime.  *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

111.    The test for reasonable suspicion is an objective one that focuses

solely on whether an objective basis exists for the detention and disregards the

officer's subjective intent. *Terry*, 392 U.S. at 21-22; York, 342 S.W.3d at 536.

112.    A reasonable-suspicion determination requires looking at the totality

of the circumstances and reasonable suspicion may exist even if those

circumstances standing alone may be just as consistent with innocent activity as with criminal activity. *York*, 342 S.W.3d at 536.

113.   Mr. Jones has a right to "be secure in [his] persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation." Tex. Const., Art. I, § 9.

114.   Qualified immunity attaches to a civil complaint against a police officer when the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

115.   This doctrine shields government officials performing discretionary functions from liability under Section 1983 for civil damages.

116.   Here, it is clear that Officer Hernandez violated clearly established law and is not entitled to qualified immunity.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff David R. Jones demands judgment and prays for the following relief, jointly and severally, against all Defendants.

a. Full and fair compensatory damages in an amount to be determined by a jury;

b. Punitive damages $150,000;

COMPLAINT AND DEMAND FOR JURY TRIAL – DAVID JONES 6:25-cv-308

c. Reasonable attorney's fees and costs of this action; and

d. Any such other relief as appears just and proper.

## **JURY DEMAND**

Mr. Jones hereby demands a trial by jury of all issues so triable, pursuant to

Fed. R. Civ. P. 38(b).

Respectfully Submitted,

LAW OFFICES OF CJ GRISHAM
PLLC

**CJ GRISHAM**
Texas State Bar No. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726

*COUNSEL FOR PLAINTIFF*